**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
(516) 826-6500
Salvatore LaMonica, Esq.
Jordan Pilevsky, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

                                              Chapter 11

740 REALTY LLC,                           Case No. 15-43754 (NHL)

                    Debtor.
-------------------------------------------------------------x

# **DEBTOR'S CHAPTER 11 AMENDED PLAN OF REORGANIZATION**

**LAMONICA HERBST & MANISCALCO, LLP**
Attorneys for 740 Realty LLC
Chapter 11 Debtor

By: Salvatore LaMonica, Esq.
Jordan Pilevsky, Esq.

3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500

# TABLE OF CONTENTS

Page

ARTICLE I   DEFINITIONS.................................................................................................1

ARTICLE II   CLASSIFICATION OF CLAIMS AND INTERESTS ........................................9

ARTICLE III   TREATMENT OF CLASSES ...........................................................................10

ARTICLE IV   IDENTIFICATION OF UNIMPAIRED CLAIMS UNDER THE
AMENDED PLAN ...........................................................................................12

ARTICLE V   CONDITIONS PRECEDENT TO CONFIRMATION OF THE
AMENDED PLAN AND THE EFFECTIVE DATE.........................................13

ARTICLE VI   EXECUTION AND IMPLEMENTATION OF AMENDED PLAN................13

ARTICLE VII   AMENDMENTS AND MODIFICATIONS .....................................................14

ARTICLE VIII   EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........................15

ARTICLE IX   EFFECT OF CONFIRMATION; VESTING OF PROPERTY;
INJUNCTION..................................................................................................16

ARTICLE X   CLAIMS MATTERS........................................................................................18

ARTICLE XI   DUTIES AND RIGHTS OF DISTRIBUTING AGENT...................................19

ARTICLE XII   UNCLAIMED DISTRIBUTIONS ...................................................................20

ARTICLE XIII   RETENTION OF JURISDICTION...................................................................20

ARTICLE XIV   EVENTS OF DEFAULT ...................................................................................22

ARTICLE XV   GENERAL PROVISIONS ................................................................................23

**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
(516) 826-6500
Salvatore LaMonica, Esq.
Jordan Pilevsky, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

740 REALTY LLC,

                                        Debtor.
------------------------------------------------------------x

                                   Chapter 11

                                   Case No. 15-43754 (NHL)

## CHAPTER 11 AMENDED PLAN OF REORGANIZATION

The following amended plan of reorganization dated December 18, 2015 (the "**Amended Plan**") is hereby proposed by 740 Realty LLC, the Chapter 11 Debtor (the "**Debtor**"), and filed by its attorneys, LaMonica Herbst & Maniscalco, LLP, pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

## ARTICLE I

## DEFINITIONS

For purposes of this Amended Plan, the following terms have the meanings set forth below with the meanings to be equally applicable to the singular and plural forms of each term defined, unless a different meaning is clearly defined herein.  Terms used in this Amended Plan that are defined in the Bankruptcy Code will have the meaning assigned them therein.

1.01    "Administrative Expense" means any cost or expense of administration of the Debtor's Chapter 11 case entitled to priority in payment in accordance with the provisions of Sections 503(b) and 507(a) of the Bankruptcy Code, or as may be allowed by Final Order, including, without limitation: (a) the actual and necessary costs and expenses of preserving the Debtor's estate (other than such Claims or portions thereof which, by their express terms, are not

due or payable by the Effective Date); (b) all allowances of compensation for legal or other services or reimbursement of costs and expenses under applicable sections of the Bankruptcy Code or otherwise allowed by the Bankruptcy Court; and (c) any indebtedness or obligations incurred or assumed by the Debtor during the pendency of this Chapter 11 case. To the extent permitted under section 506(b) of the Bankruptcy Code, an Administrative Expense includes unpaid interest and any reasonable unpaid fees, costs or charges provided for under the agreements under which that Administrative Expense arose.

1.02    "Allowed Administrative Expense" means any Administrative Expense, or portion thereof, which has been allowed by Final Order of the Bankruptcy Court.

1.03    "Allowed Claim" means a Claim, other than an Administrative Expense that is: (a) listed in the Debtor's schedules, including any amendments thereto, filed in this Chapter 11 case as of the Effective Date and not listed as "disputed," "contingent," "unliquidated," or "unknown" and as to which no objection to the allowance thereof is filed; (b) set forth in a proof of Claim timely and properly filed in this Chapter 11 case on or before the deadline fixed by the Bankruptcy Court, or by applicable rule or statute, as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing having been given and as to which no objection to the allowance thereof is filed; (c) determined to be allowed by Final Order of the Bankruptcy Court, or (d) an amount that the Debtor is made aware of that it is obligated to pay. To the extent permitted under section 506(b) of the Bankruptcy Code, an Allowed Claim shall include unpaid interest on such Claim and any reasonable unpaid fees, costs or charges provided for under the agreements under which such Claim arose.

1.04    "Allowed Priority Claim" means all or that portion of an Allowed Claim entitled to priority under Sections 507(a)(3), (4) and (6) of the Bankruptcy Code. Except as may be

allowed by the Bankruptcy Court in the case of an Allowed Priority Tax Claim under Section 507(a)(8) of the Bankruptcy Code, any interest on such claim which accrued after the Petition Date, shall be part of the Allowed Priority Claim.

1.05    "Allowed Priority Tax Claim" means any Allowed Claim, or portion thereof, except an Administrative Expense, that is entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.06    "Allowed Secured Claim" means that portion of an Allowed Claim that is secured by a valid and perfected lien on property of the Debtor, to the extent of the value of the interest of the holder of such Allowed Secured Claim in the property of the Debtor as determined by the Bankruptcy Court pursuant to section 506(a), together with such interest (including interest accrued on or after the Petition Date) fees, costs, and charges as may be allowed by the Bankruptcy Court under section 506(b).

1.07    "Allowed Unsecured Claim" means any Allowed Claim, or portion thereof, which is not an Allowed Administrative Expense Claim or an Allowed Secured Claim, and which is not entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

1.08    "Amended Plan" means this amended plan of reorganization and any amendments permitted in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.09    "Auction Sale" means the public auction sale, as governed by the Bidding Procedures, of the Debtor's right, title and interest in the Real Property to the highest or best bidder, free and clear of all liens, claims and encumbrances, if any, with such liens, claims and encumbrances to attach to the proceeds of sale in the same priority and extent as they existed on the Petition Date.

1.10    "Bankruptcy Code" means Title 11 of the United States Code, and any amendments thereof applicable to this Chapter 11 case and in effect on the Petition Date.

1.11    "Bankruptcy Court" means the United States District Court for the Eastern District of New York and, to the extent of any reference made by such Court pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the Eastern District of New York or any other Court having lawful jurisdiction over this Chapter 11 case.

1.12    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, and any amendments or supplements thereto including any local bankruptcy rules adopted by the Bankruptcy Court.

1.13    "Bidding Procedures" means the bidding procedures that will govern the terms and conditions of the public auction sale of the Real Property, which bidding procedures were approved by order of the Bankruptcy Court dated November 19, 2015.  The Bidding Procedures are attached to the Amended Plan as Exhibit "A", and the terms therein are incorporated into the Amended Plan.

1.14    "Chapter 11" means Chapter 11 of the Bankruptcy Code.

1.15    "Claim" means a claim, as defined in Section 101(5) of the Bankruptcy Code whether or not asserted against the Debtor.

1.16    "Class" means any class into which Claims are classified pursuant to Article II of the Plan on the Effective Date.

1.17    "Closing" means the date of the consummation of the sale of the Real Property to the Successful Bidder in accordance with the terms of the Amended Plan and the Bidding Procedures.

1.18    "<u>Confirmation Account</u>" means the bank account to be established by the Distributing Agent to hold all funds necessary to make distributions under the Amended Plan on the Effective Date, which bank account shall be a banking institution that is an authorized depository in the Eastern District of New York.

1.19    "<u>Confirmation Date</u>" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.20    "<u>Confirmation Order</u>" means the order issued by the Bankruptcy Court confirming the Amended Plan pursuant to Section 1129 of the Bankruptcy Code.

1.21    "<u>Debtor</u>" means 740 Realty LLC.

1.22    "<u>Distribution</u>" means the payments made by the Distributing Agent under the Amended Plan to holders of Allowed Claims and Allowed Administrative Expense Claims.

1.23    "<u>Disputed Claim</u>" means a Claim (other than an Allowed Claim), proof of which has been filed with the Bankruptcy Court and an objection to the allowance of which has been filed with the Bankruptcy Court and has been or is interposed prior to the final date of the filing of such objection set forth in the Confirmation Order or such other applicable period of limitations fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, and as to which such dispute or objection has not been determined by a Final Order; and  pursuant to a judgment or order of a court of competent jurisdiction which judgment or order has been stayed or as to which judgment or order (or any revisions, modifications or amendments thereof) the Debtor's time to appeal or seek review or rehearing has not expired by reason of statute or otherwise; provided, however that (a) with respect to any Disputed Claim for which a proof of claim has not been filed with, or fixed by, the Bankruptcy Court in the amount of a sum certain, the amount of such disputed claim, shall, for purposes of the Amended Plan, be fixed or

liquidated by the Bankruptcy Court prior to the Confirmation Date under section 502 of the Bankruptcy Code or may be fixed by an agreement in writing between the attorneys for the Debtor and the holder thereof, or such disputed claims may be fixed or determined by a final order entered after the Confirmation Date, and (b) the amount of any Disputed Claim may be such lesser amount of the amount in which such Disputed Claim was filed, as the Bankruptcy Court may order, or as the Debtor and the holder of such a Disputed Claim may agree upon in writing, and, provided further, that in no event shall any holder of a Disputed Claim if and when such Disputed Claim becomes an Allowed Claim, be entitled to receive from the Debtor an amount greater than the amount of such Disputed Claim so estimated or determined by the Bankruptcy Court or agreed upon by the Debtor and the holder thereof.

1.24    "Distributing Agent" means the law firm of LaMonica Herbst & Maniscalco, LLP, which has been counsel to the Debtor in this proceeding and will make payments in accordance with the terms of this Amended Plan.

1.25    "Effective Date" means the day of the Closing on the sale of the Real Property in accordance with the terms of the Amended Plan.

1.26    "Estate" means the estate of the Debtor created under Section 541 of the Bankruptcy Code.

1.27    "Exculpated Parties" means the Debtor and any current agent, representative, attorney, accountant, financial advisor, broker or other professional of the Debtor.

1.28    "Executory Contract" means any of the contracts to which the Debtor is a party and was a party on the Petition Date and which are executory within the meaning of Section 365 of the Bankruptcy Code.

1.29    "Fee Application" means any application of professionals under applicable provisions of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Chapter 11 case.

1.30    "Fee Claim" means a Claim under an applicable provision of the Bankruptcy Code or otherwise allowed by the Bankruptcy Court, for allowance of compensation and reimbursement of expenses to a professional in this Chapter 11 case.

1.31    "Final Order" means an order, judgment, decree, stipulation, or other agreement which is "so ordered" by the Bankruptcy Court, 14 days after the entry of which on the docket of the Bankruptcy Court, in these proceedings has not been reversed, stayed, modified or amended.

1.32    "Foreclosure Proceeding" means that state court mortgage foreclosure action captioned as, *4th Sunset Estates, LLC v. 740 Realty LLC, NYC ECB, City of NY Dep't of Housing Preservation & Development*, and commenced in the Supreme Court of the State of New York, County of Kings, under Index Number 29815/2009.

1.33    "Interest" means any "equity security" or "equity security holder" as those terms are defined in Sections 101(16) and (17) of the Bankruptcy Code.

1.34    "Lender" shall mean the secured creditor, its successors and assigns, 4th Sunset Estates, LLC.

1.35    "Lender's Claim" means the Amount of Claim as set forth in the Proof of Claim filed by Lender on October 12, 2015, which consists of: (i) the sum of $995,612.68 as of September 17, 2015; (ii) interest accruing from September 18, 2015 at the per diem rate of $245.49; and (iii) reasonable post-petition attorney's fees and costs which, as of December 11, 2015, are approximately $20,000.00.  Lender's Claim shall be an Allowed Secured Claim.

1.36    "Litigations" means any litigation commenced under this Chapter 11 case, including, without limitation, actions to avoid and recover preferential and fraudulent transfers.

1.37    "Petition Date" means August 13, 2015 the date the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

1.38    "Net Proceeds" means the proceeds realized from the Litigations, after payment of Allowed Administrative Expenses in connection therewith for attorneys and other professionals duly retained in connection with the Litigations.

1.39    "Priority Tax Claims" mean those Claims of governmental units that are entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.40    "Professional" means the attorneys and other professionals retained by the Debtor pursuant to Final Order of the Bankruptcy Court.

1.41    "Real Property" means the real property known as, and located at, 740 4th Avenue, Brooklyn, New York 11232, designated block 648, lot 42.

1.42    "Receiver" means Harry Horowitz, Esq., the state court appointed received charged with the responsibility of collecting the monthly rental income and paying the operating expenses related to the Real Property pursuant to an Order dated April 28, 2010, and entered in the Foreclosure Proceeding.

1.43    "Released Parties" means the Debtor, Lender and Receiver, their respective officers, directors, members, general partners, managers or employees (acting in such capacity) and any professional person employed by and of them including attorneys.

1.44    "Sale Proceeds" means the proceeds realized from a sale of the Real Property.

1.45    "Successful Bidder" means the party who offers the highest or best bid at, or prior to, the Auction Sale in accordance with the Bidding Procedures.

1.46    "Unclaimed Property" means any cash (together with any interest earned thereon) unclaimed on the 180th day following the Effective Date and subsequent distributions. Unclaimed Property includes: (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (b) checks (and the funds represented thereby) which have not been paid; and (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such check.

1.47    "Unsecured Creditor" means the holder of an Allowed Unsecured Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    General Classification Rule

A Claim that is properly included in more than one Class is in a Class to the extent it qualifies within the description of such Class and is in a different Class to the extent it qualifies within the description of such different Class.

2.02    Acceptance of Classification

Any holder of a Claim who fails to object, in writing, to the classification of Claims provided in the Amended Plan, and who has not filed such objection with the Bankruptcy Court and served such objection upon counsel for the Debtor, at least twenty (20) days prior to the hearing on confirmation of the Amended Plan shall be deemed to have accepted such classification and shall be bound thereby.

2.03    Unclassified Claims

2.03.1 Administrative Expense Claims: This Class consists of all Allowed Administrative Expenses Claims, including those of the Debtor's counsel or other retained professionals as authorized by and subject to the approval of the Bankruptcy Court.

2.03.2 <u>United States Trustee Quarterly Fees</u>: All statutory quarterly fees and applicable interest due to the Office of the United States Trustee that come due up to and including the earlier of the date of entry of a final decree closing this Chapter 11 proceeding or of the date of entry of an order dismissing or converting the case to one under Chapter 7 of the Bankruptcy Code.

2.03.3 <u>Priority Tax Claims</u>: Claims of governmental units that are entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

2.04    <u>Classification</u>

For purposes of the Amended Plan, except for all Unclassified Claims as set forth above, all Allowed Claims shall be placed in the following Classes, which Classes shall be mutually exclusive.

2.04.1  Class 1 Claims – Class 1 consists of all Allowed Secured Claims which are secured by the Real Property.

2.04.2  Class 2 Claims – Class 2 consists of all Allowed Priority Claims.

2.04.3  Class 3 Claims – Class 3 consists of all Allowed Unsecured Claims.

2.04.4  Class 4 Claims – Class 4 consists of the 100% member interest of the Debtor held by Chaim Glanzer.

## ARTICLE III

## <u>TREATMENT OF CLASSES</u>

3.01    <u>Allowed Administrative Expense Claims</u>

Administrative Expense Claims are not impaired.   Each holder of an Allowed Administrative Expense Claim shall be paid in full, in cash, on the Effective Date from the Sale Proceeds or on such other date and upon such other terms as may be agreed upon by the holder of such Allowed Administrative Expense Claim and the Debtor.   The Receiver may be paid from

either the Sale Proceeds or the funds on hand in the Receiver's account on the Effective Date.  In the event of any subsequent conversion of this case to a case under Chapter 7 of the Bankruptcy Code, all payments on account of any Allowed Administrative Expense Claim are deemed to have been made in the ordinary course of the Debtor's business and will not be deemed preferential or unauthorized under Sections 547 or 549 of the Bankruptcy Code.  Holders of Administrative Expense Claims are not entitled to vote on the Amended Plan and are deemed to have accepted the Amended Plan.

Allowed Administrative Expense Claims, if any, representing liabilities incurred in the ordinary course of business by the Debtor will be assumed and paid by the Debtor in accordance with the terms and conditions of the arrangements with the particular creditor and in accordance with ordinary business terms.

3.02    United States Trustee Claims

The United States Trustee claims are unimpaired.  The Debtor shall pay all statutory fees and applicable interest due to the Office of the United States Trustee that come due up to and including the earlier of the date of entry of a final decree closing this Chapter 11 proceeding or of the date of entry of an order dismissing or converting the case to one under Chapter 7 of the Bankruptcy Code.

3.03    Priority Tax Claims

Priority Tax Claims are unimpaired.  Allowed Priority Tax Claims of governmental units, if any, will be paid in full on or within fifteen (15) days after the Effective Date.

3.04    <u>Class 1 Secured Claims</u>

Class 1 Allowed Secured Claims are impaired.  The Allowed Secured Claims shall be paid in cash, in full, at the Closing, unless otherwise agreed to by such claim holder.  Lender's Claim is an Allowed Secured Claim.

3.05    <u>Class 2 Claims – Allowed Priority Claims</u>

Class 2 Allowed Priority Claims, if any, shall be paid in full on or within fifteen (15) days after the Effective Date.  Therefore, Class 2 Claims are unimpaired.

3.06    <u>Class 3 Claims – Allowed Unsecured Claims</u>

Class 3 Allowed Unsecured Claims shall be paid in full, plus 1% of each respective claim, on or within fifteen (15) days after the Effective Date, or upon such other terms as agreed between the Debtor and holders of Allowed Class 3 claims.  Therefore, Class 3 Claims are unimpaired.

3.07    <u>Class 4 Claims – Allowed Member Interest</u>

Class 4 Member Interest class consists of the 100% membership interest held by Chaim Glanzer in the Debtor.  Mr. Chaim Glanzer shall be paid any funds remaining in the Confirmation Account after the payment of Allowed Administrative Expense Claims and Allowed Claims in accordance with the Amended Plan and in accordance with their legal rights. Mr. Chaim Glanzer will retain his equity interest in the Debtor to the extent and nature as it existed on the Petition Date.  Therefore, Class 4 is unimpaired.

**ARTICLE IV**

**<u>IDENTIFICATION OF UNIMPAIRED CLAIMS UNDER THE AMENDED PLAN</u>**

4.01    Unimpaired Classes

All classes are unimpaired under the Amended Plan.

## ARTICLE V

## CONDITIONS PRECEDENT TO CONFIRMATION OF
## THE AMENDED PLAN AND THE EFFECTIVE DATE

5.01    In order for the Amended Plan to be confirmed, the Confirmation Order must be entered by the Bankruptcy Court.  The Confirmation Order shall include authorization to the Debtor to sell the Real Property.

5.02    As set forth in section 1.23 above, the Effective Date shall occur on the day of the Closing.

## ARTICLE VI

## EXECUTION AND IMPLEMENTATION OF AMENDED PLAN

6.01    Timing of the Amended Plan

Consistent with the requirements set forth in Article V, the implementation of the Amended Plan occurs on the Effective Date, after the Confirmation Order has been entered by the Bankruptcy Court.

6.02    Source of Funding

On the Effective Date, the Debtor shall sell, assign, transfer and convey all right, title and interest in the Real Property in accordance with this Plan and the Bidding Procedures.  The sale shall be free and clear of all liens, claims, and encumbrances of whatever kind or nature (the "**Liens**") with such Liens to attach to the proceeds of sale in the order and priority as they existed on the Petition Date.  As permitted by the Sections 1123(a)(5) and 1123(b)(4) of the Bankruptcy Code, confirmation of the Amended Plan by the Bankruptcy Court shall constitute approval of a sale of the Real Property to the Successful Bidder and the authorization for the Debtor close on the sale of the Real Property.  The terms of the Amended Plan provide that the Effective Date of the Amended Plan shall be the day of the Closing.  The Real Property will be sold to a

Successful Bidder free and clear of the Liens.  Distributions to all Allowed Administrative Expense Claims and Allowed Claims under the Plan will be funded from the Sale Proceeds of the Real Property.

The sale and transfer of the Real Property by the Debtor to the Successful Bidder shall not result in the incurrence of any stamp tax or similar tax as those taxes are exempt under Section 1146(a) of the Bankruptcy Code.  The Office of the City Register of the City of New York shall record any documents effectuating such transfer without the payment of such transfer taxes.

On or after the Effective Date, the Debtor shall continue to exist with all the powers of a corporation under applicable law, may use and dispose of property and compromise or settle any claims in accordance with this Amended Plan.

## ARTICLE VII

## **AMENDMENTS AND MODIFICATIONS**

7.01    <u>Amendment of Plan</u>

The Debtor reserves the right to amend and modify the Amended Plan prior to the Confirmation Date in any manner necessary to obtain confirmation of the Amended Plan, to the extent permitted by the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. Such amendments may be made at, or prior to, the hearing on confirmation of the Amended Plan without further notice to any party in interest, except an announcement in open court made on the record at the confirmation hearing.  After the Confirmation Date, the Debtor may, upon an order of Bankruptcy Court in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defects, or omissions or reconcile any inconsistency in this Amended Plan in a manner necessary to carry out the purposes and intent of the Amended Plan.  Any material modifications

to the Amended Plan subsequent to confirmation of the Amended Plan shall be on notice to creditors and with a hearing to be held in connection therewith.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.01    Assumption/Rejection of Executory Contracts and Unexpired Leases

To the extent the Debtor was a lessee to any other executory contracts and/or unexpired leases, as of the Petition Date, the Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease: (a) was previously assumed or rejected by the Debtor, (b) previously expired or terminated pursuant to its own terms, or (c) is the subject of a motion to assume filed on or before the Confirmation Date.  The Confirmation Order shall constitute an order of the Court under Sections 363 and 365 of the Bankruptcy Code approving the contract and lease assumptions and rejections described above, as of the Effective Date.

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, under Section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor or the assignee of the Debtor assuming such contract or lease, by cure, or by such other treatment as to which the Debtor and such non-Debtor counterparty to the executory contract or unexpired lease shall have agreed in writing.  If there is a dispute regarding the nature or amount of any cure, the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or any other matter pertaining to assumption, the Debtor shall cure within thirty (30) days following the entry of a Final Order resolving the dispute and approving the assumption or the assumption and assignment, as the case may be.

If the rejection by the Debtor, pursuant to the Amended Plan or otherwise, of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely filed proof of claim or a proof of claim that is deemed to be timely filed under applicable law, then such Claim shall be forever barred and shall not be enforceable against the Debtor, unless a proof of claim is filed with the Clerk of the Court and served upon counsel for the Debtor within thirty (30) days of entry of the Confirmation Order.

## ARTICLE IX

### EFFECT OF CONFIRMATION; VESTING OF PROPERTY; INJUNCTION

9.01    On the Effective Date, the terms of this Amended Plan bind all holders of all Claims against the Debtor, whether or not such holders accept this Amended Plan.

9.02    <u>Injunction</u>

Effective on the Effective Date, all Persons who have held, hold, or may hold Claims against the Debtor or its assets are enjoined from taking any of the following actions against or affecting the Debtor or the assets of the Debtor with respect to such Claims (other than actions brought to enforce any rights or obligations under the Amended Plan or appeals, if any, from the Confirmation Order): (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor or the assets of the Debtor or any direct or indirect successor in interest to the Debtor, or any assets of any such transferee or successor; (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtor or its assets or any direct or indirect successor in interest to the Debtor, or any assets of such transferee or successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or the assets of the Debtor

or its assets or any direct or indirect successor in interest to the Debtor, or any assets of any such transferee or successor other than as contemplated by the Amended Plan; (d) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due the Debtor or its assets or any direct or indirect transferee of any assets of, or successor in interest to, the Debtor; and (e) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Amended Plan.

      9.03    <u>Release</u>

      As of the Effective Date, to the extent authorized by Section 1141 of the Bankruptcy Code the Released Parties are released from all Claims, demands, actions, claims for relief, causes of actions, suits, debts, covenants, agreements and demands of any nature whatsoever, in law and in equity, that any creditor had, or now has, or may hereafter have against the Released Parties arising prior to the Effective Date.  Except as otherwise provided herein and in Section 1141 of the Bankruptcy Code, all Persons shall be precluded and enjoined from asserting against the Released Parties, their assets or properties, or against any property that is distributed, or is to be distributed under the Amended Plan, any other or further Claim upon any acts or omissions, transactions or other activity of any kind or nature that occurred prior to the Effective Date. Nothing in this section shall be construed as a release of the Released Parties from claims that may constitute gross negligence, willful misconduct, criminal misconduct, fraud or failure to disclose material information which causes actual damages in regards to the Debtor's bankruptcy case.  In accordance with Section 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive a discharge.

9.04    Exculpation

The Exculpated Parties and their property and professionals who provided services to the Debtor's estate during this Chapter 11 case, and all direct or indirect predecessors-in-interest to any of the foregoing Persons, will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date in connection with or related to this estate, including but not limited to (i) the commencement and administration of the Chapter 11 case, (ii) the operation of the Debtor during the pendency of the Chapter 11 Case, (iii) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Amended Plan (including soliciting acceptances or rejections thereof); (iv) the Amended Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken during the administration of the Chapter 11 case or in connection with the Amended Plan; or (v) any Distributions made pursuant to the Amended Plan.  Nothing in this section shall be construed as a release of such person's gross negligence, willful misconduct, criminal misconduct, fraud or failure to disclose material information which causes actual damages in regards to the Debtor's bankruptcy case with respect to the matters set forth in this section.  Nothing contained in the Amended Plan shall serve to limit the liability of attorneys and professionals to their clients for malpractice pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

## ARTICLE X

## CLAIMS MATTERS

10.01   In the event that objections to Claims are filed by the Debtor, the Debtor will determine the amount of cash to be reserved with respect to that contested Claim in a sum not less than the amount required to pay that contested Claim under the Amended Plan on account of such Claim, if said Claim was proved and allowed, in full, (with interest, if applicable), and keep

on deposit such funds in the Confirmation Account.  Contested Claims that are litigated to judgment, settled or withdrawn will be satisfied from the funds held for that purpose.  Should the amount reserved by the Debtor on account of the Contested Claim exceed the amount required to satisfy the Contested Claim, any excess will be distributed to the Debtor.

10.02   Objections to Claims to the extent not already commenced by the Debtor, must be filed and served no later than ninety (90) days after the Effective Date or within such other time period as may be fixed by the Court; provided however that the Debtor will have ninety (90) days from the filing of any such Claim to file an objection.

## ARTICLE XI

## **DUTIES AND RIGHTS OF DISTRIBUTING AGENT**

11.01   <u>Nomination of LaMonica Herbst & Maniscalco, LLP to make Distributions</u>

The law firm of LaMonica Herbst & Maniscalco, LLP shall be the Distributing Agent and plan administrator under the Amended Plan and shall be responsible for making all distributions under the Amended Plan.  The Distributing Agent shall be nominated as such as part of the confirmation of the Amended Plan and such nomination is effective upon the Confirmation Date.  The Distributing Agent with the assistance of the Debtor will be responsible for implementing and effectuating all provisions of the Amended Plan in accordance with its terms.

11.02   <u>Duties and Rights of Distributing Agent</u>

Pursuant to the Amended Plan, the Distributing Agent will pay all Allowed Administrative Expenses, allowed pursuant to an Order of the Court, will distribute the monies payable to the holders of Allowed Claims in accordance with the Amended Plan, or upon such other terms as may be agreed upon between the Debtor and such holder of an Allowed Claim.

11.03   <u>Compensation of Debtor's Professionals</u>

After confirmation, to the extent the Professionals provide services to the Debtor in connection with this Amended Plan, they shall provide invoices to the Debtor for the fees incurred and any disbursements expended on behalf of the Debtor under the confirmed Amended Plan on a monthly basis. A copy of the same invoice will also be forwarded to the Office of the United States Trustee at the same time and in the same manner as delivered to the Debtor. In the event that no objection to the invoice is asserted within ten (10) days of delivery, the Debtor will be vested with the right to pay the invoice to the Professional(s). In the event a dispute over the fees of the Professionals cannot be resolved consensually, the dispute will be resolved through an appropriate application to the Bankruptcy Court. The parties agree that the Bankruptcy Court retains jurisdiction to resolve any fee dispute, to the extent one arises.

## ARTICLE XII

### UNCLAIMED DISTRIBUTIONS

12.01   For a period of 180 days following the Effective Date, unclaimed property will be held by the Debtor in a depository in compliance with Section 345 of the Bankruptcy Code for the holders of Allowed Claims which have failed to claim such distribution. For a period of 180 days following the Effective Date, and for a period of 180 days following subsequent distributions, unclaimed property due to the holder of an Allowed Claim will be released by the Debtor and delivered to such holder upon presentation and proper proof by such holder of its entitlement thereto.

12.02   At the end of the 180 days following the Effective Date and subsequent distributions, all unclaimed distributions together with the interest thereon, will be distributed to the reorganized Debtor.

## ARTICLE XIII

### RETENTION OF JURISDICTION

13.01   The Bankruptcy Court will retain jurisdiction under Chapter 11 of the Bankruptcy Code and, for the purposes set forth in Section 1127(b) of the Bankruptcy Code, for a period of 180 days from the Effective Date, including, *inter alia*, the following:

(a)      to hear and determine all Claims concerning the classification, allowance or disallowance of any Claim, if any;

(b)      to hear and determine all Claims arising out of any agreement entered into by the Debtor after the Petition Date, if any;

(c)      to alter, modify and amend the Amended Plan pursuant to Section 1127 of the Bankruptcy Code, or to remedy any defect, cure any omissions or reconcile any inconsistency in the Amended Plan or Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Amended Plan and to the extent authorized by the Bankruptcy Code or Bankruptcy Rules;

(d)      to hear and adjudicate the Litigations, including without limitation, any settlement of such Litigations, and/or any disputes concerning settlement of the Litigations, or to enforce and/or implement the terms of any such settlement;

(e)      to hear and determine such other matters as may be provided for in the Confirmation Order of the Bankruptcy Court, and for the purposes set forth in Sections 1127(b) and 1142 of the Bankruptcy Code or as contained in Bankruptcy Rules 1019 and 3020(d);

(f)      to hear and determine all applications for compensation;

(g)      to make such orders *ex parte* or upon application, as are necessary or appropriate, and to hear and determine any controversies and/or disputes, concerning the interpretation and/or implementation of the provisions of the Amended Plan;

(h)      to enter a final order or decree concluding the Chapter 11 case or an order of substantial consummation;

(i)      to hear and determine all matters regarding the sale of the Real Property pursuant to the Amended Plan and any matters related thereto; and

(j)      to determine other matters contained in the Confirmation Order or that is authorized under the provisions of the Bankruptcy Code.

## ARTICLE XIV

## EVENTS OF DEFAULT

14.01   The following events constitute defaults under the Amended Plan:

(a)      the Debtor fails to perform or observe any of the transactions, covenants, representations or warranties contained in this Amended Plan; and

(b)      the Debtor fails to make any payments provided for in the Amended Plan.

14.02   Subject to Section 14.03 herein, the occurrence of any events of default entitles any creditor or party in interest to move this Bankruptcy Court, on notice to the Debtor, Debtor's counsel, and the Office of the United States Trustee, to declare the Amended Plan terminated and of no further force and effect, and any deferred indebtedness and any accruals of interest on payments, if any, shall then become immediately due and payable.  Failure or delay by any creditor or party in interest to give such notice or to make such motion to declare an event of default shall not constitute a waiver or release of any right of any creditor or party in interest to move to declare a default by reason of such event or any other prior or subsequent event of default.

14.03   Upon written receipt from any creditor or parties in interest of a notice of default (as set forth in section 14.02), the Debtor will have ten (10) business days from receipt of such notice to cure such default and during such ten (10) business days, any creditor or party in

interest will take no action to terminate this Amended Plan.  If such default is cured within the

ten (10) business day period, then the Amended Plan will continue in full force and effect.

Notices pursuant to this section 14.03 must be sent to the Debtor by certified mail, return receipt

requested to the following addresses:  LaMonica Herbst & Maniscalco, LLP, counsel for the

Debtor, 3305 Jerusalem Avenue, Suite 201, Wantagh, New York 11793 Attn: Jordan Pilevsky,

Esq.

**ARTICLE XV**

**<u>GENERAL PROVISIONS</u>**

15.01   <u>Headings</u>

The headings used in the Amended Plan are inserted for convenience or reference only

and neither constitutes a portion of the Amended Plan nor in any manner affects the provisions or

interpretations of this Amended Plan.

15.02   <u>Notices</u>

Notices will be deemed given when received.  All notices, requests or demands described

in or required to be made in accordance with the Amended Plan must be in writing and must be

delivered personally or by registered or certified mail, return receipt requested, to:

Attorneys for the Debtor:

Jordan Pilevsky, Esq.
LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Facsimile: (516) 826-0222

To the Debtor:
740 Realty LLC
5308 New Utrecht Avenue
Brooklyn, New York 11219
Attn: Chaim Glanzer

15.03   Change of Address

The Debtor may change the address at which it is to receive notices under the Amended Plan by sending written notice pursuant to the provisions of this Article to the person to be charged with the knowledge of such change.

15.04   Rounding to the Nearest Dollar

Notwithstanding any provision to the contrary herein, payments requiring portions of a dollar will not made.  Actual payments will be made by rounding such fractional obligation, up or down, to the nearest whole dollar.

15.05   Successors and Assigns

The rights and obligations of any entity named or referred to in the Amended Plan will be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

15.06   Post Confirmation Reporting

The Debtor shall file a report of its activities and financial affairs with the Bankruptcy Court on a quarterly basis, within twenty (20) days after the conclusion of each post-confirmation calendar quarter.  Any such reports shall be prepared substantially consistent with (both in terms of content and format) the applicable Bankruptcy Court and the United States Trustee guidelines for such matter.

15.07   Final Decree

In accordance with E.D.N.Y. Local Bankruptcy Rule 3022-1, within fourteen (14) days of the full administration of this estate, the Debtor shall file, on notice to the Office of the United States Trustee, an application and proposed order for a final decree or, if necessary, an application requesting an extension of such time.

15.08   <u>Governing Law</u>

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

15.09    References

Unless otherwise specified, all references in the Amended Plan to Sections and Articles are to Sections and Articles of the Amended Plan.


Dated: December 18, 2015
       Wantagh, New York

                             **LaMonica Herbst & Maniscalco, LLP**
                             Attorneys for the Debtor


                     By:       _**s/ Salvatore LaMonica**_
                             Salvatore LaMonica, Esq.
                             Jordan Pilevsky, Esq.
                             3305 Jerusalem Avenue, Suite 201
                             Wantagh, New York 11793
                             (516) 826-6500

Dated: December 18, 2015
       Brooklyn, New York


                             **740 Realty LLC**
                             Chapter 11 Debtor


                     By:       _**s/ Chaim Glanzer**_
                             Name:  Chaim Glanzer
                             Title:   Sole Member


*M:\Documents\Company\Cases\740 Realty LLC\Plan and DS\Amended DS and Plan\Amended Plan jp(2)12-15-15.doc*

# EXHIBIT A

## BIDDING PROCEDURES

1.      These bidding procedures (the "**Bidding Procedures**") are being promulgated in connection with the public auction sale (the "**Auction Sale**") of real property known as, and located at, 740 4th Avenue, Brooklyn, New York 11232, designated block 648, lot 42 (the "**Real Property**").  The Bidding Procedures shall govern the auction process for the sale of the Real Property.

2.      The seller of the Real Property is 740 Realty LLC, the Chapter 11 Debtor (the "**Debtor**"), which Chapter 11 case is pending before the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**"), assigned case number 15-43754 before the Honorable Nancy H. Lord, United States Bankruptcy Judge.  The sale of the Real Property is being conducted pursuant to Bankruptcy Code Sections 363(b), (d), (f), (k) and (m) and is subject to confirmation of a plan of reorganization and approval by the Bankruptcy Court.

3.      The Auction Sale will be held on December 16, 2015 at 2:30 p.m. at the United States Bankruptcy Court for the Eastern District of New York located at 271 Cadman Plaza East, Brooklyn, New York 11201, Room 3554. The Debtor reserves the right to change the location, date and/or time of the Auction Sale upon reasonable notice to all parties in interest, and at a date and time acceptable to Lender (defined below) and shall electronically file such notice on the Bankruptcy Court's docket.

4.      It is understood that in order to be permitted to bid on the Real Property all prospective bidders must deliver to Maltz Auctions, Inc. d/b/a Maltz Auctions, the Debtor's duly retained broker ("**Maltz**"), a certified or bank check, in the amount of One Hundred Thirty-Five Thousand Dollars ($135,000.00) (the "**Qualifying Deposit**"), payable to the order of "LaMonica Herbst & Maniscalco, LLP, as attorneys" prior to the commencement of the Auction Sale, which amount shall serve as a partial good faith deposit against payment of the purchase price.  The highest bidder at the Auction Sale (the "**Successful Bidder**") must execute and agree to be bound by (i) these Bidding Procedures and (ii) a Memorandum of Sale, a copy of which is annexed hereto.  At the conclusion of the Auction Sale, the Debtor or its representative will return the Qualifying Deposits to all unsuccessful bidders.

5.      At the Auction Sale, 4th Sunset Estates, LLC, the secured creditor, its successors and assigns ("**Lender**") shall have the right, pursuant to 11 U.S.C. § 1129(b)(2)(A)(ii) and § 363(k), to credit bid at such sale up to the full amount of Lender's Claim, and, if Lender purchases such property, may offset Lender's Claim against the purchase price of such property.  Lender shall not be required to deliver a Qualifying Deposit unless it intends on bidding an amount that exceeds the Lender's Claim, and any such Qualifying Deposit shall be based on the portion of the bid that exceeds the Lender's Claim.  Debtor waives any right to challenge Lender's right to credit bid.  "Lender's Claim" means the Amount of Claim set forth in the Proof of Claim filed by Lender on October 12, 2015, or

$995,612.68, plus post-petition attorney's fees and the accrual of interest at the per diem rate of $245.49.

6.    The Successful Bidder shall (a) deliver to Maltz a certified check or bank check, payable to "LaMonica Herbst & Maniscalco, LLP, as attorneys", in an amount of at least 10% of the successful bid price minus the Qualifying Deposit (the "**Down Payment**") within 48 hours of the Auction Sale; and (b) pay the Balance (that being defined as the difference between the successful bid and the Qualifying Deposit and Down Payment) of the purchase price for the Real Property to the Debtor by certified check or bank check at the closing of title to the Real Property (the "**Closing**"). If Lender's credit bid is the winning bid at the Auction it will be considered the Successful Bidder.

7.    The Successful Bidder must close title to the Real Property on a date (the "**Closing Date**") which is not later than thirty (30) calendar days from the later of: (i) the date of entry of an Order of the Court (the "**Sale Confirmation Order**") confirming the sale of the Real Property to the Successful Bidder and (ii) the date of entry of an Order of the Court confirming the Debtor's Chapter 11 plan of reorganization (the "**Plan Confirmation Order**"). The Debtor, with Lender's written consent which shall not be unreasonably withheld, may extend the Closing Date. The closing shall take place at the office of LaMonica Herbst & Maniscalco, LLP, 3305 Jerusalem Avenue, Suite 201, Wantagh, New York 11793. **Time is of the essence** for Successful Bidder to perform all of the obligations required on his part to be performed by the Closing Date. The parties may mutually agree to an early closing but the Closing Date may be extended solely by the Debtor. The Debtor shall require the Lender's consent, which shall not be unreasonably withheld, to extend the Closing Date for a period of more than 21 calendar-days.

8.    All applicable New York State, New York City or other real property transfer taxes incurred by the transfer of the Real Property shall be paid at closing by the Debtor unless such taxes are exempt under 11 U.S.C. § 1146. The Successful Bidder acknowledges that they will be responsible for completion of any ACRIS forms or applicable recording documents, if required, and fees associated in connection therewith.

9.    The Debtor is authorized to grant an interested party "stalking horse" rights to be the initial bidder at the Auction Sale. Should the Debtor, prior to the Auction Sale, agree to provide a bidder "stalking horse" rights, such rights and procedures will be as follows: (i) the "stalking horse" bidder shall pay to the Debtor an amount equal to 10% of the "stalking horse" bid prior to the Auction Sale (the "**Stalking Horse Bid**"); (ii) the "stalking horse" bidder must execute and agree to be bound by these Bidding Procedures and a Memorandum of Sale, a copy of which is annexed hereto; and (iii) a bid by any competing Offeror for the Real Property at the Auction Sale shall be at least $30,000.00 more than the Stalking Horse Bid.

10.    There is no contingency of any kind or nature that will permit the Successful Bidder to withdraw its bid and receive a return of its deposit. In connection with the Closing and

the Closing Date, the Successful Bidder is hereby given notice, and expressly acknowledges that, **TIME IS OF THE ESSENCE WITH RESPECT TO THE SUCCESSFUL BIDDER'S OBLIGATION TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE CLOSING DATE. FAILURE BY THE SUCCESSFUL BIDDER TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE CLOSING DATE WILL RESULT IN THE DEBTOR RETAINING THE QUALIFYING DEPOSIT/DOWN PAYMENT AS LIQUIDATED DAMAGES AND AS AN ASSET OF THE ESTATE, AND THE TERMINATION OF THE SUCCESSFUL BIDDER'S RIGHT TO ACQUIRE THE REAL PROPERTY UNDER THESE BIDDING PROCEDURES.**

11.    The Debtor reserves the right to reject any offeror or bidder, who in the sole discretion of the Debtor, and after consultation with the Lender, it believes is not financially capable of consummating the purchase of the Real Property.  Expenses incurred by the Successful Bidder, or any competing bidder concerning any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Debtor, its estate or professionals be responsible to pay such expenses.

12.    The Successful Bidder shall be obligated to close title to the Real Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel these Bidding Procedures.  Anything to the contrary contained in these Bidding Procedures notwithstanding, the Debtor shall have the right, subject to paragraph 7 herein, to adjourn the Closing Date in order to remedy any defect to title.

13.    In the event that the Successful Bidder for the Real Property fails to timely tender the Down Payment or otherwise perform its obligation under these Bidding Procedures, the Debtor, at its sole and absolute option, shall be authorized to contact the second highest bidder (the "**Second Bidder**") to sell the Real Property to the Second Bidder without any further notice or approval of the Bankruptcy Court, without giving credit for the Qualifying Deposit and Down Payment forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtor deems appropriate. Thereafter, the Second Bidder shall be deemed for all benefits and obligations to be the Successful Bidder.

14.    The Debtor, or the Debtor's professionals, and the Lender and its agents and representatives, as well as Harry Horowitz, the state-court appointed receiver and his agents and representatives, have not made, and do not make, any representations as to the Real Property's physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Real Property or this Auction Sale, which might be pertinent to the purchase of the Real Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Real Property; (ii) the potential qualification of the Real Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-

compliance of the Real Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Real Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Real Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Real Property; (vi) the present and future condition and operating state of any and all machinery or equipment on the Real Property, if any, and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Real Property; (viii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Real Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Real Property. Each bidder hereby expressly agrees and acknowledges that no such representations have been made. The Debtor is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Real Property, made or furnished by the Debtor or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Debtor.

15.    The Real Property is being sold in accordance with 11 U.S.C. § 363, **"AS IS", "WHERE IS" IN ITS CURRENT CONDITION, WITHOUT ANY REPRESENTATIONS, COVENANTS, GUARANTEES OR WARRANTIES OF ANY KIND OR NATURE WHATSOEVER**, and free and clear of any liens, claims or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale, and is subject to among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; and (d) any building or zoning ordinances or any other applicable municipal regulations and violations thereof; (e) all leases, if any, as may exist or encumber the Real Property or any portion thereof; and (f) environmental conditions.

16.    By delivering the Qualifying Deposit, all bidders acknowledge that they have had the opportunity to review and inspect the Real Property and the form of the transfer of the Real Property that the Debtor will execute to convey the Real Property, and will rely solely on their own independent investigation and inspection of the Real Property in making their bid. Neither the Debtor nor any of its representatives make any representations or warranties with respect to permissible uses of the Real Property, including, but not limited to, the zoning of the Real Property, certificate of occupancies with respect to the Real Property, the environmental condition of the Real Property or any other matters associated thereto. All bidders acknowledge that they have conducted their

own due diligence in connection with the Real Property, and are not relying on any information provided by the Debtor or its professionals.

17.     The Debtor shall convey the Real Property by delivery of a Deed.  The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure.  In the event that the Successful Bidder is unable to obtain title insurance then the Debtor, in its sole discretion, shall have the option to obtain title insurance on behalf of the Successful Bidder at the expense of the Successful Bidder to be paid at the Closing.

18.     If the Debtor is unable to deliver title to the Real Property in accordance with these Bidding Procedures for any reason whatsoever, its only obligation will be to refund the Qualifying Deposit, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Debtor, its estate or the Debtor's professionals, attorneys and agents, the Lender and its agents and representatives, and Harry Horowitz, the state-court appointed receiver and his agents and representatives.

19.     Neither the Debtor, Debtor's counsel, Maltz, the Debtor's estate, the Lender and its agents and representatives, nor Harry Horowitz, the state-court appointed receiver and his agents and representatives, are liable or responsible for the payment of fees of any broker that has not previously been approved by Order of the Bankruptcy Court for the Eastern District of New York.

20.     Nothing contained in these Bidding Procedures is intended to supersede or alter any provisions of Title 11 of the United States Code (the "**Bankruptcy Code**") or otherwise interfere with the jurisdiction of the Bankruptcy Court.  All of the terms and conditions set forth in these Bidding Procedures are subject to modification as may be directed by the Debtor or by the Bankruptcy Court.  The Debtor, upon notification to the Office of the United States Trustee and the Lender, reserves the right to modify the Bidding Procedures at the Auction Sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Bankruptcy Court.

21.     These Bidding Procedures may be read into the record, or specifically incorporated therein by reference, at the Auction Sale of the Real Property.  By making a bid for the Real Property, all bidders will be deemed to have acknowledged having read these Bidding Procedures and having agreed to be bound by them.  Additionally, by tendering the Qualifying Deposit for the purchase of the Real Property, the Successful Bidder acknowledges having read these Bidding Procedures and having agreed to be bound by them.

22.     By participating in the Auction Sale, all bidders consent to the jurisdiction of the United States Bankruptcy Court for the Eastern District of New York and any disputes concerning the sale of the Real Property shall be determined by the United States Bankruptcy Court for the Eastern District of New York.

23.    The Debtor reserves its right to withdraw the Real Property from sale, either prior, or subsequent to the sale, for any reason whatsoever, as it deems necessary or appropriate, upon either Lender's consent, which shall not be unreasonably withheld, or approval of the Bankruptcy Court.

24.    The sale of the Real Property is subject to confirmation by the Debtor and the Bankruptcy Court.  The Debtor may, but shall not be obligated to, notify the Successful Bidder in writing regarding the Debtor's acceptance of its bid within four (4) business days of the Auction Sale.

25.    Pursuant to Bankruptcy Rule 6004-1 no appraiser, auctioneer or officer, director, stockholder, agent, employee or insider of any appraiser of auctioneer, or relative of any of the foregoing, shall purchase, directly or indirectly, or have a financial interest in the purchase of, any property of the estate that the appraiser or auctioneer has been employed to appraise or sell.

26.    Each bidder shall confirm at the auction that it has not engaged in any collusion with respect to the bidding or the sale.

27.    These Bidding Procedures are subject to the approval of the Bankruptcy Court.

I have read these Bidding Procedures and agree to be bound by them.


Signature:    _____    Date:    _____


Print Name:    _____


Title:    _____

## **MEMORANDUM OF SALE**

The undersigned has this ____ day of _____, 2015, agreed to purchase the of real property known as, and located at, 740 4th Avenue, Brooklyn, New York 11232, designated block 648, lot 42 (the "**Real Property**"), vested in 740 Realty LLC, the Chapter 11 Debtor (the "**Debtor**") for the sum of $_____, and hereby promises and agrees to comply with the bidding procedures of the sale of the Real Property, as set forth in the annexed Bidding Procedures.


_____          _____
PURCHASER (Signature)                      PURCHASER (Signature)

_____          _____
PRINT NAME OF PURCHASER                     PRINT NAME OF PURCHASER

_____          _____
ADDRESS                                    ADDRESS

_____          _____
TELEPHONE NUMBER                           TELEPHONE NUMBER

_____          _____
FAX NUMBER                                 FAX NUMBER

_____          _____
E-MAIL ADDRESS                             E-MAIL ADDRESS


Received from _____ the sum of $_____ as a non-refundable deposit for the purchase of the Real Property pursuant to the Bidding Procedures, except to the extent as provided in the annexed Bidding Procedures.

740 Realty LLC, the Chapter 11 Debtor
c/o LaMonica Herbst & Maniscalco LLP
Attorneys for the Debtor
3305 Jerusalem Avenue, Suite 201
Wantagh, NY  11793
(516) 826-6500

This is to verify that the offer for the Real Property is for the sum of $_____.

_____
Maltz Auctions, Inc. d/b/a Maltz Auctions

## BIDDER'S ATTORNEY INFORMATION

Name:          _____

Address:       _____

Phone:         _____

E-mail:        _____

*M:\Documents\Company\Cases\740 Realty LLC\Sale Motion\Bidding Procedures FINAL.doc*